**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LARRY LEE,

        Petitioner,

v.                                 Case Number: 2:10-CV-12202

RANDALL HAAS,

        Respondent.

_____/

**OPINION AND ORDER CONDITIONALLY GRANTING PETITION
FOR WRIT OF HABEAS CORPUS AND GRANTING
CERTIFICATE OF APPEALABILITY**

Petitioner Larry Lee filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, challenging his convictions for one count of third-degree criminal sexual

conduct and one count of fourth-degree criminal sexual conduct.  At the time he filed the

petition, Petitioner was in the custody of the Michigan Department of Corrections.[1]  He

claims that his convictions were obtained in violation of his Sixth Amendment right to

self-representation and that his appellate counsel was ineffective in failing to raise this

claim on direct review.  Respondent has filed a response arguing that Petitioner's self-

representation claim is procedurally defaulted and meritless and that his ineffective

assistance of appellate counsel claim is untimely.

Petitioner repeatedly, timely, and unequivocally asserted his right to self-

representation.  Despite this, the trial court failed to acknowledge, honor or inquire into

---

[1] Petitioner has since been discharged from custody.  His discharge does not defeat § 2254's "in custody" requirement because the requirement is satisfied as long as a petitioner was incarcerated at the time a petition is filed.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Petitioner's request, and appellate counsel failed to raise the issue on appeal. The court

finds that Petitioner's ineffective assistance of appellate counsel claim is timely and that

Petitioner is entitled to habeas relief on this claim.  Petitioner's self-representation claim

is procedurally defaulted and the court denies relief on that claim, but grants a certificate

of appealability.

## I.  BACKGROUND

Petitioner was convicted as set forth above following a jury trial in Washtenaw

County Circuit Court.  The Michigan Court of Appeals set forth the relevant facts as

follows:

> Defendant, an openly homosexual man, was convicted of sexually
> assaulting two heterosexual men while they were sleeping or
> incapacitated.  The victims did not know each other and only saw each
> other in relation to this case.  On March 6, 2006, DL was at an Ann Arbor
> bar with Mike Allers and others.  While there, DL met defendant.  During
> the night, DL and others "were taking turns buying rounds" of drinks.
> When the bar closed at 2:00 a.m., approximately 15 people, including
> defendant, went to DL's apartment for an after-party. After socializing until
> about 4:00 a.m., DL went to bed while people were still in his apartment.
> Allers testified that he saw DL sleeping under the covers in his bed.  When
> Allers left the party, he observed defendant performing oral sex on another
> male in the hallway of the apartment building.  DL testified that he later
> awoke to the sensation of someone performing oral sex on him.  When DL
> looked down, his boxers had been pulled down and defendant's face was
> next to his genitals.  In response to DL's questions, defendant indicated
> that DL wanted it.  DL was "in shock," "very upset," and demanded that
> defendant leave.  When defendant failed to comply, DL left the room.
> Defendant eventually left by cab.  At trial, DL denied being flirtatious or
> sexually aggressive toward defendant.  Allers corroborated DL's
> statements in this regard.
>
> In contrast, defendant testified that DL initiated their sexual encounter.  DL
> was allegedly flirtatious and sexually aggressive throughout the night, and
> told defendant that he was "heteroflexible."[1]  Defendant claimed that DL
> chased him around the apartment, followed him into the bathroom, kissed
> him on the lips, and grabbed his penis, causing defendant to fall backward
> and knock the sink off the wall.  Defendant was upset and left in a cab.

2

Defendant denied pulling down DL's boxers, performing oral sex on DL, or performing oral sex with another male in the hallway of the building.

On June 3, 2006, CB attended a party with his fraternity brother, Luke Stein; approximately 50 people attended the party. CB consumed several alcoholic beverages over the course of the evening. CB remembered using the bathroom at about 2:30 a.m. CB's next memory was briefly waking up in a bedroom with his pants down, boots off, and defendant performing oral sex on him. CB heard defendant say, "let me finish," and he blacked out again. CB woke at dawn, was taken out to a cab, and told to "shut up." CB recalled waking up in his bed the next afternoon. He subsequently reported the sexual assault. CB did not recall seeing defendant at the party and denied socializing, flirting, or kissing him. CB denied consenting to any sexual act with defendant.

Stein saw defendant at the party. Stein last saw CB around 1:45 a.m., and Stein was asked to leave the party about 2:00 a.m. According to Stein, on the next afternoon, CB was crying, "really upset," and "still seemed like he was intoxicated in some way." After CB told Stein what had occurred, Stein drove him to the police station to report the sexual assault. Stein testified that CB had never expressed a sexual interest in men and was dating a woman.

Defendant testified that CB initiated their sexual encounter, which defendant described as consensual. At the party, CB allegedly was flirtatious, complimentary, and asked to accompany defendant to his apartment. At the apartment, CB and defendant kissed and performed oral sex on each other. CB allegedly wanted to have intercourse during their encounter, which defendant declined. Defendant claimed that CB's demeanor changed after CB ejaculated because he was concerned that others would think he was a homosexual. Defendant testified that CB did not appear intoxicated during their sexual encounter.

Bianca Johnson, defendant's former close friend, testified that defendant expressed a sexual interest in young, straight, white men but also disliked those same men for how they treated women. Defendant allegedly pursued straight white men to humiliate them and "pay them back" for their treatment of women. Defendant denied expressing any intent to "pay back" straight men. The defense presented two additional witnesses, who testified that defendant never expressed a desire to "get back" at white males.

----------------------------

[1]DL denied making this statement.

3

*People v. Lee*, Nos. 277551 & 277552, 2008 WL 4276473, *1-2 (Mich. Ct. App. Sept. 16, 2008).

On March 13, 2007, Petitioner was sentenced to 3 to 15 year's imprisonment for the third-degree criminal sexual conduct conviction and 9 months in jail for the fourth-degree criminal sexual conduct conviction.  Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims through counsel: (i) ineffective assistance of counsel; (ii) trial court failed to conduct adquate inquiry into breakdown of attorney-client relationship; (iii) denied right to present a defense; and (iv) trial court erred in denying motion to sever.  Petitioner filed a *pro se* supplemental brief raising ten additional claims.  A self-representation claim was not raised until Petitioner filed a motion for leave to add additional constitutional claims to his Standard 4 brief in the Michigan Court of Appeals.  (*See* Dkt. # 25-6, Pg. ID 872) The Court of Appeals denied Petitioner's motion to add claims, stating that, "Administrative Order 2004-6, Standard 4, provides that the defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion.  It does not provide for the filing of multiple briefs by the defendant.  The brief filed with the motion is returned with this order." (*Id.*at Pg. ID 871.)  The Michigan Court of Appeals affirmed Petitioner's convictions.  *Id.*  Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims raised through counsel in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Lee*, 483 Mich. 1132 (Mich. July 9, 2009).

Petitioner then filed a habeas corpus petition, which the court held in abeyance pending exhaustion of state court remedies.  Petitioner filed a motion for relief from

4

judgment in the trial court raising these claims: (i) denied right to self-representation; (ii)

denied right to be represented by counsel of his own choosing; and (iii) received

ineffective assistance of trial and appellate counsel.  The trial court denied the motion.

(*See* Dkt. # 37-5.)  Both the Michigan Court of Appeals and Michigan Supreme Court

denied Petitioner's application for leave to appeal the trial court's decision.  *People v.*

*Lee*, No. 313359 (Mich. Ct. App. Sept. 24, 2013); *People v. Lee*, 495 Mich. 963 (Mich.

March 26, 2014).

Petitioner then returned to this court and filed an amended petition.  He presents

these claims for habeas relief:

> I.  Petitioner wrote to the trial judge and said he wanted to represent himself. When Petitioner attempted to raise the issue in court, the trial judge actively prevented him from making a record.  The trial judge's failure to conduct any inquiry into Petitioner's assertion of the right to self-representation was structural error.
>
> II.  Petitioner was deprived of the effective assistance of appointed appellate counsel where counsel failed to investigate and obtain Petitioner's letters to the judge before filing a brief on appeal and then failing to raise the *Faretta* claim ... posed by the letters in a supplemental brief once the letters were in the appellate record.

## II. STANDARD

Review of this case is governed by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of

habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or

6

... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

### A. Petition for Writ of Habeas Corpus

Petitioner's habeas claims concern the Sixth Amendment right to self-

7

representation.  Petitioner argues that he expressly, clearly, and timely asserted his right to self-representation and that his appellate attorney rendered constitutionally deficient assistance in failing to raise this claim on direct review.  The court finds that Petitioner's appellate attorney was ineffective in failing to raise the self-representation claim on direct review and the state court's contrary holding is an unreasonable application of *Strickland v. Washington*.  His self-representation claim is procedurally defaulted and may only be excused by a showing of cause and actual prejudice.  The ineffectiveness of appellate counsel establishes cause to excuse the default.  But Petitioner does not satisfy the "actual prejudice" prong of the procedural default analysis.

### 1.  Timeliness of Ineffective Assistance of Appellate Counsel Claim

Respondent argues that Petitioner's ineffective assistance of appellate counsel claim was not timely filed because it was not included in the original petition. Respondent concedes that the original petition was filed within the one-year limitations period, but argues that the ineffective assistance of appellate counsel claim (which was raised in the amended petition) is untimely because it does not relate back to the date of the original petition.  (Dkt. # 36, Pg. ID 1025.)

Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the amended claims are tied to the "same core of operative facts" as alleged in the original petition.  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  "An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650.  The

8

Supreme Court rejected the petitioner's argument that his amended petition related back to the original petition simply because the original and amended petitions arose from the same trial and conviction.  *Id.*  The Court reasoned that if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."  *Id.* at 662.

In the instant case, Petitioner filed his amended petition on May 23, 2014, over two years after the filing of the original petition and well after the expiration of the one-year AEDPA statute of limitations period.  Therefore, if the ineffective assistance of counsel claim is to be timely, it must relate back to the original petition.  Petitioner raised his self-representation claim in the original habeas petition.  Petitioner's ineffective assistance of counsel claim is based upon appellate counsel's failure to raise the self-representation claim on direct appeal with the Michigan Court of Appeals.  The ineffective assistance of appellate counsel claim arises from the "same core of operative facts" as the self-representation claim.  The facts that support Petitioner's self-representation claim are those that concern whether he unequivocally, clearly, and timely asserted his right.  The facts relevant to a determination of Petitioner's ineffective assistance of appellate counsel claim are those that assist the court in assessing whether "the omitted issues [were] significant and obvious" and whether they were "clearly stronger than those presented in the actual appeal."  *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015), *cert. denied* 136 S. Ct. 878 (Jan 11, 2016)*;* (citing *McFarland v. Yukins*, 356 F.3d 688, 710-11 (6th Cir. 2004)).  Thus, both claims require an assessment of the self-representation claim and are tied to a common core of operative

9

facts.  Rule 15(c)'s relation back principles apply and the ineffective assistance of counsel claim is timely.

## 2. Right to Self-Representation

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel in his defense.  U.S. Const. amend. VI.  In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court interpreted this right to counsel as encompassing "an independent constitutional right" of a defendant to represent himself at trial when the defendant "voluntarily and intelligently elects to do so."  *Id.* at 807.

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.  It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation – to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. . . . The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Id.* at 819.

The Sixth Amendment's right to counsel guarantee refers to the "assistance" of counsel.  "The language and spirit of the Sixth Amendment contemplate that counsel ... shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally."  *Id.* at 820.  Where a defendant chooses to accept a lawyer's representation, counsel is allocated a certain amount of power to make binding decisions of trial strategy.  *Id.*  But "[t]his allocation can only be justified ... by the defendant's consent, at the outset, to accept counsel as his representative."  *Id.* at 820-21.  Unless a defendant acquiesces to representation by

counsel, "the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." *Id.* at 821.

To invoke the right to self-representation, a defendant first must assert his self-representation right "in a timely manner." *Martinez v. Ct. of App. Of Cal., Fourth App. Dist.,* 528 U.S. 152, 162 (2000). Second, the defendant must "knowingly and intelligently" waive the right to counsel after being advised of "the dangers and disadvantages of self-representation." *Faretta,* 422 U.S. at 835. Finally, a defendant's request for self-representation must be made "clearly and unequivocally." *Id.*, 422 U.S. at 835; *see also United States v. Martin*, 25 F.3d 293, 295 (6th Cir.1994) ("To assert the right of self-representation, a defendant must do so unequivocally.").

### a. Factual Background

Before his criminal trial commenced, Petitioner sent at least two letters to the state trial court judge expressing his dissatisfaction with his court-appointed counsel and stating that he either wanted to represent himself, or, alternatively, wanted the court to appoint substitute counsel or, if the court would not appoint substitute counsel, allow another attorney Petitioner had been in contact with to represent Petitioner. In one letter which is undated, but, because it refers to a hearing to be held in October 2006, was written sometime before that date, Petitioner stated, "I asked [my trial counsel] many times to file a motion to withdraw as counsel, so that I can exercise my right to self-representation in the cases against me. She refuses to file the withdrawal motion." (Dkt. # 3-1, Pg. ID 74.) Petitioner also stated, "I am competent, educated and will take that risk [to represent myself]. Please do intervene and force [trial counsel] to withdraw so that I can represent myself, it's my right isn't that correct." *Id.* Finally, he stated, "I

11

will bring the matter up at the [October 2006] motion hearing and hopefully you will help my issue and get me on the road to self-representation." *Id.*  In a second letter, dated October 6, 2006, Petitioner again asserted his right to self-representation, "I am serious about representing myself. ... not only do I want to represent myself, it is my right." (Dkt. # 3-2, Pg. ID 77.)

At the conclusion of an evidentiary hearing in the trial court on October 13, 2006, Petitioner attempted to raise the issue of self-representation.  The trial court acknowledged receipt of Petitioner's letters, but addressed only the competency of counsel, not Petitioner's request to represent himself:

| | |
|---|---|
| Petitioner: | Judge, I would just like to address the – |
| The court: | No. |
| Petitioner: | Trial court just about an issue not related to this.  It's just an issue – |
| The deputy: | He said no. |
| Petitioner: | Just an issue about my representation. |
| The court: | I – |
| Petitioner: | I've been basically unsatisfied on the basis of no show appointments and, and matters raised at – were not dealt with earlier enough when we had the time to deal with them. |
| The court: | Yeah, you wrote me letters about that, Mr. Lee. |
| Petitioner: | (No audible response). |
| The court: | Stop.  You wrote me letters about that.  This is your attorney.  This is going to be your attorney at trial.  There has been so far as I can see effective representation.  I'm not going to take any further action on that.  We're adjourned. |

(Dkt. # 17-7, Pg. ID 253.)

12

Petitioner's request to represent himself does not appear to have been further addressed following this exchange.  Petitioner's trial commenced on December 11, 2006.

### b. Procedural Default

Respondent argues that Petitioner's self-representation claim is procedurally defaulted.  Petitioner raised this claim for the first time on state-court collateral review.[2] The state court held the claim was procedurally defaulted under Michigan Court Rule 6.508(D) because Petitioner failed to raise the claim on direct appeal and because he failed to establish good cause for failing to do so.  (Dkt. # 37-5.)  When a petitioner's claim is denied in state court "due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review." *Seymour v. Walker*, 224 F.3d 542, 50 (6th Cir. 2000) (citing Wainwright v. Sykes, 433 U.S. 72, 80, 84–87 (1977)).  Here, Petitioner's claim is procedurally defaulted and he may obtain habeas review of the claim "only by showing that were was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case."  *Id.* (*citing Sykes*, 433 U.S. at 87, 90-91).

### i. Cause and Prejudice

As cause to excuse the procedural default of this claim, Petitioner claims that

---

[2]  Petitioner attempted to raise this claim on direct review when he filed a motion for leave to add constitutional claim to his Standard 4 brief in the Michigan Court of Appeals.  (Dkt. # 25-6, Pg. ID 869.)  But the Michigan Court of Appeals denied Petitioner's motion to add claims.  (Dkt. # 25-6, Pg. ID 868.)

appellate counsel was ineffective for failing to raise this claim on direct appeal.  For ineffective assistance of appellate counsel to excuse a default, "it must meet[] *Strickland [v. Washington's]* ineffectiveness standard."  *Kennedy v. Mackie*, No. 14-2342, 2016 WL 232133, at *9 (6th Cir. Jan. 19, 2016).  The standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), requires Petitioner to demonstrate: (1) that his "appellate counsel's 'performance was deficient'" and (2) that "'the deficient performance prejudiced the defense.'" *Jones v. Bell,* 801 F.3d 556, 562 (6th Cir. 2015), *cert. denied Jones v. Smith,* 136 S. Ct. 878 (2016).  If Petitioner meets *Strickland's* high burden, the Court then considers whether Petitioner has shown "actual prejudice" to excuse the procedural default, a much higher standard than the *Strickland* prejudice standard.  *Id.*

First, the court considers whether counsel's performance was deficient. To demonstrate deficient performance, Petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The Supreme Court has made clear that a criminal defendant has no constitutional right to demand that appellate counsel raise every possible colorable issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy," *Smith v. Murray*, 477 U.S. 527, 536 (1986), and may be "the *best* type of performance."  *Jones*, 801 F.3d at 562 (emphasis in

14

original). Thus, appellate counsel need not raise every nonfrivolous issue, but he or she must "exercise reasonable professional judgment." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones*, 463 U.S. at 751-753). "In the appellate context, 'To establish deficient performance, [petitioner] must demonstrate that his appellate counsel made an objectively unreasonable decision by choosing not to raise other issues instead of [the challenged issue], meaning that issue 'was clearly stronger than issues that counsel did present.'" *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) (*quoting Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009)).

Petitioner sent at least two letters to the state trial judge prior to trial asking to represent himself and reminding the trial court that "not only do I *want* to represent myself, *it is my right.*" (Dkt. # 3-2, Pg. ID 77 (emphasis added).) This assertion of the right to self-representation was unequivocal. Petitioner also attempted to raise the issue of self-representation at the conclusion of an evidentiary hearing on October 13, 2006, but the trial court dismissed his attempt without inquiry or discussion. Petitioner's first attempts to exercise his right to self-representation were made at least one month before trial commenced. There is no indication that Petitioner's request to represent himself was an attempt to disrupt the proceedings or that allowing him to represent himself would have resulted in undue delay of the proceedings. He also clearly understood the risks associated with self-representation and preferred to assume those risks rather than continue with counsel. (*See* Dkt. # 3-1, Pg. ID 74 (stating, in letter to trial court judge: "I am competent, educated and will take that risk [to represent myself].").)

The last (and only) Michigan state court decision to address Petitioner's

15

ineffective assistance of appellate counsel claim was the trial court's decision denying

Petitioner's motion for relief from judgment.  The trial court denied Petitioner's

ineffective assistance of appellate counsel claim which Petitioner had asserted as cause

for failing to raise his self-representation claim on direct review:

> The defendant fails to demonstrate good cause as to why these issues
> [including the self-representation claim] that could have been raised on
> appeal or in previous motions were not raised.  Defendant argues that
> these issues were not previously raised because his appellate counsel
> failed to raise them, and therefore appellate counsel was ineffective.
> Defendant's arguments are disingenuous.  On one hand, Defendant made
> several arguments, pro se, to the Court of Appeals regarding his trial in
> addition to his appellate counsel's brief, which the Court of Appeals
> addressed.  Defendant also filed an Application for Leave to Appeal to the
> Michigan Supreme Court pro se.  He now argues that a new trial should
> be granted because he should have been allowed to represent himself.
> On the other hand, Defendant attempts to demonstrate good cause for
> failing to raise these issues in a prior appeal or motion because of the
> ineffectiveness of his appellate counsel.  Defendant is merely using this
> motion for post-appellate relief as another opportunity to file an appeal.
> Defendant has not established good cause for failing previously to raise
> these issues.

(Dkt. # 37-5, Pg. ID 1291.)

The trial court's reasoning is difficult to parse.  The trial court fails to cite

*Strickland, Jones, Faretta*, or any case setting forth the standard for evaluating

ineffective appellate counsel claims or self-representation.  In fact, the trial court cites

no case law.  The trial court opinion fails to acknowledge that Petitioner's claims

implicate two fundamental constitutional rights – the right to the effective assistance of

counsel and the right to self-representation.  The trial court appears to find that

Petitioner was foreclosed from asserting an ineffective assistance of appellate counsel

claim because he wanted to be allowed to represent himself at trial and because he

raised several issues pro se on appeal.  This explanation is an unreasonable application

16

of *Strickland* and *Faretta*.  It ignores *Faretta's* dictate that "the right to defend is personal."  422 U.S. at 834.  Petitioner had a right to choose to represent himself regardless of whether he would have done so competently.  *Id.*  At trial, the trial court failed to honor Petitioner's decision in violation of *Faretta.*  In denying Petitioner's motion for relief from judgment, the trial court failed to recognize Petitioner's rights under *Faretta* and counsel's obligations under *Strickland* and its progeny.  Petitioner has satisfied the first prong of the procedural default analysis, by showing appellate counsel's ineffectiveness under *Strickland.*

The failure of appellate counsel "to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir.2005) (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir.2001)).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

The record before the Court shows that Petitioner clearly, unambiguously, and repeatedly invoked his right to self-representation.  Petitioner also satisfies *Faretta's* timeliness component by asserting his right over one month before trial.   "[A]s a matter of clearly established law[,] *Faretta* can only be read to require a court to grant a self-representation request when the request occurs weeks before trial."  *Hill v. Curtin*, 792 F.3d 670, 678 (6th  Cir. 2015).  No explanation appears to justify counsel's determination to forego a very strong *Faretta* claim.  And, because the denial of the right to represent oneself is not amenable to harmless error analysis, it is a structural error.

17

*McKaskle*, 465 U.S. at 177 n. 8. "The right is either respected or denied; its deprivation cannot be harmless." *Id.* If Petitioner's self-representation claim had been raised on direct review, it almost certainly would have been found meritorious. Petitioner would have been granted a new trial, a different outcome than did occur. Thus, Petitioner has established a reasonable probability that the outcome of his appeal would have been different had this claim been raised. Petitioner has satisfied the *Strickland* standard for ineffective assistance of appellate counsel. The trial court's contrary holding is an unreasonable application of *Strickland*.

### ii. Actual Prejudice

As the Sixth Circuit Court of Appeals recently made clear, the finding of *Strickland* cause and prejudice does not end the procedural default analysis. *Jones,* 801 F.3d at 563. "Habeas petitioners must *additionally* show 'actual prejudice' to excuse their default—even if the error that served as the 'cause' is a structural one that would require a new trial." *Id.* (citing *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012); *Francis v. Henderson*, 425 U.S. 536, 542 (1976)). Actual prejudice is not presumed even when a habeas petitioner has shown that counsel's error resulted in *Strickland* prejudice. *Id.* Actual prejudice to excuse procedural default "requires more than the prejudice prong under *Strickland*." *Id.* (*citing Ambrose*, 684 F.3d at 652). Whereas the *Strickland* prejudice prong required Petitioner to show a reasonable probability the result of the appeal would have been different, actual prejudice requires a showing the "outcome *of the trial* would have been different." *Id.* (*citing Ambrose* 684 F.3d at 652).

Petitioner has not shown actual prejudice. Indeed, his argument in support of a

18

finding of actual prejudice rests on the fact that the denial of a defendant's right to self-representation is a structural error. (*See* Dkt. # 32, Pg. ID 26.)  But a finding of structural error, by itself, does not establish actual prejudice.  Petitioner makes no other showing of actual prejudice and the court, guided by the Supreme Court's finding that "[t]he right of self-representation is a right that when exercised usually decreases the likelihood of a trial outcome unfavorable to the defendant," finds none.  *McCaskle*, 465 U.S. at 177.  While appellate counsel's ineffectiveness satisfies the "cause" prong of the procedural default analysis, no actual prejudice resulted.

If unable to demonstrate cause and prejudice, a procedural default may nevertheless be excused if a petitioner demonstrates that review of his claims "is needed to prevent a fundamental miscarriage of justice."  *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013).  The fundamental miscarriage of justice exception applies in the extraordinary case where the habeas petitioner demonstrates that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (citing *Murray*, 477 U.S. at 496).  "Actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner makes no such showing here.  Therefore, the default is not excused.

### 3.  Remedy

19

Although Petitioner's self-representation claim is procedurally defaulted, the court has determined that habeas relief shall be granted for Petitioner's ineffective assistance of appellate counsel claim.  The question thus is what relief should be granted.  The court has broad discretion in fashioning habeas corpus relief.  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).  Federal courts are authorized to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

The Supreme Court has affirmed the issuance of a conditional writ of habeas corpus that required a state court to grant the petitioner a new appeal of right where the petitioner received ineffective assistance of appellate counsel on direct review.  *Evitts v. Lucey,* 469 U.S. 387, 396 (1985).  *See also Benoit v. Bock*, 237 F. Supp. 2d 804, 812 (E.D.Mich.2003) (Lawson, J.) (conditionally granting writ based on ineffective assistance of appellate counsel and ordering that writ will be granted unless the "Michigan Court of Appeals reinstates the petitioner's appeal of right and appoints counsel").

The court concludes that the appropriate remedy in this case is to conditionally grant a writ of habeas corpus.  The State of Michigan shall appoint counsel for Petitioner within 60 days from the date of this Order.  Petitioner, through appointed counsel, shall be permitted to file an application for leave to appeal in the Michigan Court of Appeals.  If counsel is not appointed or if the Michigan Court of Appeals does not accept the application for filing, Petitioner should seek further relief in this court.

### B. Certificate of Appealability

Before Petitioner may appeal the court's denial of his stand-alone self-representation claim, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of appealability may issue "only if the

20

applicant has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2).  "When the district court denies a habeas petition on procedural

grounds without reaching the p[etitioner]'s underlying constitutional claim[s], a

[certificate of appealability] should issue when the p[etitioner] shows, at least, that jurists

of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484

(2000). Having undertaken the requisite review, the court concludes that jurists of

reason could find debatable whether the self-representation claim was procedurally

defaulted.

## IV.  CONCLUSION

IT IS ORDERED that the Petition for Writ of Habeas Corpus is CONDITIONALLY

GRANTED.  The State of Michigan shall appoint counsel for Petitioner within 60 days

from the date of this Order.  Petitioner, through appointed counsel, shall be permitted to

file an application for leave to appeal in the Michigan Court of Appeals.  If counsel is not

appointed or if the Michigan Court of Appeals does not accept the application for filing,

Petitioner should seek further relief in this court.

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED for

Petitioner's self-representation claim.


      S/Robert H. Cleland                  
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 17, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 17, 2016, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\10-12202.LEE.conditionally grant habeas.wpd